We are now ready to hear our first case for this morning. Kimberly Hively against Ivy Tech Community College. And I believe we will hear from Mr. Nevins first. Good morning Chief Judge and members of the Seventh Circuit. I'm Greg Nevins and along with John Davidson both of the Lamb Legal Defense and Education Fund we represent Ms. Hively in this case. It is our citation to Supreme Court authority and Ivy Tech's response that tells this court all it needs to know about how to resolve this case. In our briefing we cited no fewer than five cases with standards and holdings specifically about the proper interpretation of Title VII sex discrimination provision that is irreconcilable with the immunization of sexual orientation discrimination. We also cited at least another half dozen Supreme Court cases all decided after this court's decision in Hamner all holding that courts should entertain all Title VII claims within the language of the statute and not erect any barriers or exclusions because the court prefers bright line rules or wants to avoid results that are either undesirable or not in line with what the court thinks Congress wants. Ivy Tech's response to this is notable in three ways. First it simply dismissed the sex discrimination specific cases that we cited as too old to help us. Then it not only ignores the more recent authority but also repeats the exact error condemned by the Supreme Court in those cases. That of urging courts not to apply the literal words of the statute because it would quote result in or quote have the effect of covering sexual orientation discrimination. So can I ask you Mr. Nevin let me just quickly ask you and then you can turn to Judge Rovner whether you in your view there is one broad category sex discrimination that might manifest itself in various ways including discrimination based on sexual orientation or whether you see sexual orientation as something somehow different from sex? I think that I think the simple question answer that your honor is that is that the the Supreme Court has said if you're being treated differently because of your sex then it qualifies as sex discrimination even if there's a colloquial phrase that might be more familiar to people for instance sexual harassment the usual target of a sexual harassment may not come home and tell their closest friend I've just been discriminated against because of my sex because in fact that person there may have been all kinds of other reasons why like in the classic example of male on female sexual harassment that that woman was targeted and maybe that she worked more conveniently the same hour she was considered more attractive or more interested whatever it might be the fact is that she was a woman and that was the reason why she was discriminated against so in the same way that just because we have a colloquial expression called sexual orientation discrimination that is more familiar as to how we truth that what is being held against my client her attraction to women is something that was not held against any men who worked for Ivy Tech so you're saying essentially this is just a but-for test you know but for the sex this wouldn't have happened yes that as this court said in Shepard and and I would also say that you know we're not that we do we definitely prevail under a formalistic sense of what constitutes sex discrimination but it's not just merely formalistic sense I mean one of the purposes of title seven has been said many times is to strike at the entire spectrum of disparate treatment of men and women that results from gender stereotypes and this clearly is in line with that so whether you look at it from a formalistic sense or whether you look from it as being coherent with the actual purposes of title seven this is sex discrimination now thank you yes although although it's certainly true that congressional inaction can be a hazardous basis for inferring the intent of congress it's also true that congress has again and again refused to expand the reach of title seven despite numerous court decisions refusing to interpret sex to include sexual orientation can we make anything of that at all and if I could your honor I'd like to focus two aspects of your question first off as a matter of statute as a matter of interpretation of what the word sex means uh you know in the court this court in u lane said that it just means that this that what congress has done and not done says that sex just means male or female well we're not here to re-argue that point there and and basically we're fine with that so this is but on call says that as a statutory interpretation matter you do not uh you don't concern yourself with what congress uh the specific intent of the 88 congress that passed it and it can't possibly be the case that by issuing a unanimous decision in on call that justice Scalia was inviting the court to guess at what the 89th do what are we now at 113th congress did not intend to do by not passing these laws so I so as far as a statutory interpretation matter this court should not be trying to define what congress wanted to cover and not cover so are we placing too much power in the judiciary to amend the word sex to include sexual orientation when we know that this was not the initial intent of congress and congress has shown no affinity for altering its interpretation of sex in all these ensuing years so help us with that your your honor indeed what we're asking for is just the opposite we want that we want the court to apply the terms of the statute and then let congress pass if congress wants to pass an exception they already know how to do that in fact they did do that with the Americans with Disabilities Act they said no matter else no matter what this law covers or doesn't cover it doesn't cover sexual orientation discrimination it doesn't cover gender identity discrimination they have not done that here the supreme court has said over and over that they've given you basically a pass that says if you and I think maybe the most dramatic example that is the Lewis case which was just decided in 2010 in which this court very very noted very ably noted that that the the results the plaintiffs were looking for i think the court here said it would lead to ludicrous results of being people being able to wait a long time and and sit on a cause of action the supreme court didn't disagree with that at all they they said they didn't call it ludicrous i think they called it puzzling but they said don't worry about that if it leads to a result that congress didn't want that it leads to result that that you think is inconsistent that is not your that is not your concern let congress sort that out if you if you apply the law and and cover everything that it covered all the claims that are covered by the terms of the statute you're doing your job and it's up to congress to do their job and passing any exclusion now ivy tech relied on the u lane case which was decided before price waterhouse i just want to get a sense of the scope of the position you're arguing in u lane the plaintiff was a biological male who took hormones had gender reassignment surgery and then presented to work as a female could she state a claim under your theory now under price waterhouse well it's it's not it can't be argued that some of the tenants some of the principles that a decision in our favor would would um would underline and would would uh spell out would be in favor of of a person in position for instance the idea of of uh of defining a statute by what it means and not and not being concerned about what congress specifically intended or what later congresses didn't intend that would obviously help michelin as well um and but but basically i mean as the panel opinion aptly pointed out you don't need a broader definition of sex than male or female in order to to recognize that sexual orientation discrimination is covered and for instance if i mean it's okay for a man to be attracted women it's not okay for a woman to be attracted women you don't need a broader definition of sex than male or female in the same way i what would be the inevitable argument is for instance if someone named david schroer uh was was given an offer by the library of congress and the exact same person saying that they were showing up as diane schroer um got that that offer was reneged undoubtedly that person would say it was discrimination because of sex i don't think the police court needs to reach that that that's a decision for another um court as to whether it would it would absolutely necessarily follow but it can't really be disputed that that the principles that are at issue here do overlap in some respects so i wonder if you could say a word or two about um sex stereotyping which was one of the aspects uh discussed in in our panel opinion um is it discrimination on the basis of uh taking adverse employment action because somebody doesn't conform to sexual stereotypes it definitely is your honor and and under hopkins right under hopkins right and and and of course what some courts have done is tried to limit the types of gender non-conformity to exactly what ann hopkins and the ways in which she was didn't conform to stereotypes but that's wrong for a couple for for a couple of reasons one the supreme court specifically said in price waterhouse they repeated the line that title 7 strikes at the entire spectrum of different treatment based on gender stereotypes but that wasn't just dicta that line came came from the uh the manhart decision at least came from it from a supreme court standpoint and there the quote-unquote stereotype that that was an issue was that women live longer than men well that's not just a stereotype that's an actuarial fact if you look at women in the aggregate but what it doesn't what it means is that any individual woman might not live longer than the man who's her co-worker and so making her pay more into the pension fund because you are going to generalize about her and say well she's going to live longer that that's what's wrong so any non-conformity with it with this with a generalization about a sex is is actionable under title 7 and it's not just limited to if the non-conformity manifests itself in the demeanor or the appearance so the question then becomes is what's the difference or do you see any difference between sex stereotyping and step and sexual orientation you know i i don't know whether i can improve on i believe the panel said that that uh the notion that that women should be attracted only to uh to men is the i think they said the quintessential stereotype we submitted a supplemental authority to this court recently that uh i'm going to get it talked about it in terms of the prototypical stereotype or the ultimate stereotype whichever way you look at it i mean you think about the various stereotypes that people have about the genders and they're true a given percentage of the time and not true an awful lot of percentage of time and it really doesn't matter um it but it certainly it is true that that there are gender norms that are related to you know women should only women should be attracted to men and only to men and if you transgress that stereotype and you're discriminated against because of it that absolutely should be covered by under the price waterhouse theory well one of the arguments you make is that we should overturn hamner because it doesn't provide a clear framework for lower courts but doesn't hamner provide a clear framework that sexual orientation is not a protected trait under title 7 well and again as i mentioned in all the cases that came after hamner in the spring court that we cited we cited lewis we cited thompson we cited ash we cited all those cases they all said that a preference for bright line rules is not a good reason to deviate from the text so that would be my first response but also in reality i think when you look back on it there was an observation the panel opinion about how many how common it is for the american people to think that federal law already covers sexual orientation discrimination and you think about why that's so it's because it's i mean these employees go to these trainings they're taught well you can't you can't discriminate against a woman because she drives a harley or because she has bear season tickets or because you know she has tattoos and so if they're told that oh but you can fire her because she's a lesbian well of course they think that that's not that that can't possibly be the case under under title 7 title 7 so what you have is a what you have is an incoherent framework it's just internally inconsistent so whether you look at it from a from a bright line rule which the supreme court has condemned if it's within the terms of title 7 or just trying to come up with a coherent framework for what should be actionable and what shouldn't be under the notion of gender stereotype discrimination i think we prevail under either approach the idea that that because of the cases that we rely on are are old and vintage really shouldn't distract this court for long um twice this court recently and it's in bank cases in the block case it overruled a a fair housing act case from 2004 and the only supreme court case it cited in support of overruling it was the traficante case from 1972 32 years earlier which i think illustrates that this court understands that its overriding obligation is to uh is is to make sure that it's it's uh interpretations of statutes are in line with supreme court authority i thought actually to go back to your earlier point that your argument was that your proposed rule was in fact a simpler more bright line rule than anything that hamner or other courts have come up with insofar as it simply asked would this person have received the same treatment if everything else had been the same but they had been of quote-unquote the appropriate sex as opposed to worrying about whether there's kind of a legislative history based exception to the word sex for sexual orientation or sex stereotypes or sex or characteristics that are not universal in a sex and so on and and and i'm certainly not here arguing against the bright line rule that if if a man is treated different if a woman is treated differently for the exact same thing that a man is acceptable for that is the bright line rule that on call uh supports that's also specifically what uh the court said in manhard they they articulated the quote test that but for the sex the treatment of the person would have been different and this court um cogently reduced that in the shepherd case to also treatment of a person which which would have been different if they hadn't been the sex that they are so i that that bright line i'm not saying that we're against bright line rules we're just to get something that the supreme court is set up as a test for what sex discrimination is and trying to come up with a bright line rule that says some of those are are actionable and some of those are not that's what the that's where the problem lies but has the supreme court ever defined the word sex either to include or not to include sexual orientation no your honor it has not but and so and our argument does not depend on that and and quite frankly i think that that is where a lot of the older precedents went astray they assumed that if sex was defined as the sex that you have i mean as a sex that you are instead of the sex that you have that my position loses and that's a stereotype built into that that if you are biologically you know female then you must be attracted to to men yes absolutely that's certainly an orientation stereotype that goes along with the biology yes your honor it is it is so and again again we're again all we are asking for the near under the narrowest definition of sex is male or female our our position prevails so um i would also the um so the later cases that we that we cited i would i would also remind that um especially the lewis and the thompson cases were both unanimous supreme court cases that did uh urge um that also said you were supposed to um entertain all the cases with all of the claims within the title within the statute's reach and not to be concerned about the consequences for instance in the thompson case there was a concern that well jeez if we allow third-party retaliation claims we're going to open the door to any to all kinds of claims and the court said no we understand that concern it's a legitimate concern but but but under under the interpretation of the statute it uh those kind of claims are covered and there's not going to be we're not going to allow a bright line rule to exclude some of them and not not others of course we know about the the new scott case november 4th out of the western district of pennsylvania uh are there any more of uh these title 7 sexual orientation cases that you're aware of that are sitting in district courts awaiting rulings there are there are several cases that are up for the second circuit that will be heard next month those of the zarda and uh there's a zarda in the christensen case and later the magnuson case will be heard but the evans case will be argued for the 11th circuit on december 15th and that involved a that involves a woman who is discriminated against both because of her gender non-conformity and also because she's a lesbian so the 11th circuit will be hearing that in 15 days hence so the um again and i i want to talk about the interracial relationship analogy and uh the the panel opinion accepted on uh as being on all fours but was didn't believe it could overrule the precedent of this court there are there were only two responses that were offered uh by ivy tech one was to say that race discrimination is different and of course from a you know from a historical standpoint from a social standpoint and even from a constitutional standpoint that is the case but ivy tech doesn't offer any authority as to why it would be different under title 7 indeed there are no fewer than four supreme court cases that say because the statute treats them all parallel terms uh that that the discrimination must be treated the same that true in meritor and on call in price waterhouse and in farragher versus city of boca raton um also they they try to change what our argument actually is what our claim actually is and say that well it's this is the same thing as discrimination against a caucasian heterosexual because he goes out with a lesbian for drinks well uh that is obviously not what miss highly is claiming and a plaintiff does get to talk about who you know who the comparator is but even on its own terms that that analogy doesn't work because uh and there are three different precedents of this court under each of the theories that explains why that so in the drake versus 3m case it was this court and still the leading case on this point that it doesn't matter what the level of intensity of the relationship is if if a if a white employee is discriminated against because he or she has black friends then well that may make the claim a little less plausible and a little more difficult to prove but it's still a claim under title 7 under the bellever case um that was a case where the woman a woman said well i was discriminated against because um i was considered hard to get along with but you know all the men who were hard to get along with um didn't have they didn't have a problem with that this court said well you know that's not quite as gender uh gender laden as what happened at ann hopkins but it doesn't matter i mean if it's if against a woman that wouldn't have been held against a man and that was sufficient and then in the orton bell case in a one of the more interesting and unusual examples of a claim of discrimination that where the uh woman employee said that the other workers were having sex on her desk uh and only because she was a woman this court said well uh you would have a claim if that was actually true and it's because you're a woman or or if the uh if the hierarchy wasn't responding to your claims because you were a woman uh and they were responding to similar complaints by men but factually it didn't it didn't pan out there which goes to show that it's not a matter of what it doesn't matter what it is that is held against a woman that's not held against a man it it's if that is the result of it that results in adverse employment action then title 7 is violated let me ask you yeah just sort of a hypothetical if a claim is actionable under the associational theory should an employee be able to bring a title 7 claim if the employee is not in a relationship or actively dating again and i i think the drake versus 3m case answers that which is that the level the level of the intensity whether it's just an interest um or whether it's an actual relationship whether it's an actual marriage is not relevant and i think that i can't improve on what the panel said on that point the nature of this kind of discrimination is it is the same in other words something's held against a woman that's not being held against a man so yes i'll save the rest of my time for rebuttal thank you all right that would be fine you must be miss coleman may it please the court i'm gail coleman for the equal employment opportunity commission title 7 prohibits sexual orientation discrimination by its plain language this court is not being asked to add a new protected class to the statute and there is no need to alter the original understanding of sex as meaning because of being male or because of being female we're not asking for any judicial amendment what we're asking for is a more precise understanding of the term sex this is consistent with what the supreme court has done with the statute um it is possibly in on call the supreme court said it is very likely that when congress passed title 7 they did not intend the word sex to mean to encompass same-sex harassment in fact we know that congress may not have intended sex to encompass opposite sex harassment but the the statute has now been understood that sex is defined in a broader way involved when the eeoc offered three explanations for why the word sex includes sexual orientation discrimination the first of these reasons comes from price waterhouse and it is that on um under title 7 if someone is discriminated against for failure to conform to a gender norm that is sex discrimination the quintessential failure to conform to a gender norm as this panel recognized is the failure to conform to the expectation that men will be attracted to women and women will be attracted to men so even if you have a lesbian who for example dresses and appears in all other ways to conform to gender norms she still isn't because she's violating the basic assumption that she will be attracted to a man what's the right comparison group the right comparison group is would this woman who is being discriminated against for her attraction to other women be discriminated against if she were a man well that doesn't hold everything constant in the analysis ordinarily in anti-discrimination analysis we look to others similarly situated of the other sex if we're looking at a sex discrimination claim so you have to hold everything else constant so the relevant why isn't the relevant comparison group here the plaintiff is qualified female gay so why isn't the relevant comparison group qualified male gay as opposed to just qualified in male the statute um treats it protects individuals it doesn't protect groups so that right we always look for a another employee who shares every relevant criterion quite right plaintiff except for sex and this is where the racial analogy comes in if an employer discriminates against a white employee for having an interracial relationship and also discriminates against a black employee for having an interrelation interracial relationship it's not true that the discrimination against one cancels out the discrimination against the other claims the right comparison group in that analogy is the interracial couple the employee with an interracial marriage for example or an interracial dating relationship and an employee with a same race marriage not just the opposite well that's right and that would be the comparison to the employee with a same sex relationship versus an employee with an opposite sex relationship we're trying to isolate the motivation of the employer for determining whether a forbidden criterion is the motivating factor for the employment decision so in the case of race discrimination we're trying to look to evidentiary facts that tell us that this  or tell a reasonable fact finder that sexism is the motivating reason for the employment action not homophobia as the allegation is in this case well that's assuming again that homophobia is something different from because of sex the statute doesn't say sexism it says because of sex and you cannot even define who is gay or lesbian without thinking about their sex in relation to the sex of the person that they are attracted to so so sex and sexuality are the same for purposes of title 7 analysis sex we're not talking we don't have to talk about sexuality we have to talk about sex and sexual orientation if if this employee's sex were different would the employer object to their relationship with this other person if this employee were a man with a picture of his wife on his desk would that be okay whereas if this employee is a woman with a picture of her wife that's not okay so that that is solely because of her sex if her sex were different she would be treated differently i would note that under title 7 it is appropriate to look at subclasses within a sex for example an employer cannot treat women with small children differently from men with small children you're not it's not all women who are being treated poorly it's it's women with small children but that is still illegal okay i think your time is is about up so we thank you very much Mr. Maley Thank you Chief Judge Wood members of the court may it please the court my name is John Maley counsel for Ivy Tech Community College the starting point in title 7 analysis is of course the language of the statute as the supreme court has held repeatedly and this court has held that term here sex means gender male or female but tell me please how sexual orientation discrimination is not discrimination based on the failure to adhere to norms about gender including who a person loves and with whom they have a sexual relationship yes your honor the this court has held that sexual orientation is not within but we're here to reconsider so maybe you could answer Judge Rovner's question at a deeper level yes thank you honor i will endeavor to do that in the sexual orientation focuses on the desires of that particular person heterosexual homosexual asexual bisexual it does not focus on whether they are male or female but why isn't that about their sex though i mean you're quite right this court has said in a long line of cases that these are two different concepts your opponents argue that the supreme court has never spoken to this i can think of lots of examples of instances where the courts of appeals went off on the wrong track in terms of statutory interpretation and the supreme court kindly said maybe you all thought this but now we're going to set you straight so in the Bailey case they did that with regard to use of firearms they did that in you know the Buckhannon case they did that in Milner i mean they've they've done that now and then they've said now we're speaking so in that kind of a world i think we need to ask why the word sex in the 1964 statute all along shouldn't have been understood in this broader way than the Ulane court did your honor several reasons first of all the supreme court as as acknowledged by a plaintiff's counsel has never said that includes sexual orientation and the oncology decision for instance references within the decision sexual orientation the court certainly is aware of that terminology but don't you see a trend in the supreme court you know we start out with things like you know mothers of small children and so on but then we get to cases like hopkins on cal and the supreme court is saying to us we've been trying to tell you not to delve into the collective mindset of congress some people even think that's impossible to do and you know we have the the court's language in on cal saying yeah they may not have thought of this but so what the word is there we need to apply the statute why doesn't that take us to the simple rule um the the kind of if everything else had been the same and the sex of the individual had been different uh would this have happened well your honor first to start with this court's precedent on stare decisis asked has there been an intervening high court decision and there have been i'm saying hopkins and on cal point you in a different direction from ulane and and in 1989 1990 this court has addressed those decisions since then and has addressed what the court acknowledges sometimes can be challenging maybe i'd like you to focus on a different intervening decision it's loving against virginia from 1967 state law bans marriages between a black person and a white person and the supreme court holds that that is race discrimination now here we have an employer's ban on relations between a woman and a woman why isn't that sex discrimination by exactly the reasoning of loving loving is raised by her adversary and i notice your brief doesn't mention it so i would like you to address the constitutional decision i believe on marriage yes and the supreme court holds that that's race discrimination it's also told us that race discrimination and sex discrimination in title seven mean the same thing just substitute one for the other so i'm asking you to substitute homosexuality for different race marriages and to discuss whether the rationale of loving doesn't control the treatment of the word sex in title seven your honor refer to the supreme court's decisions in pricewaterhousehopkins and on call that focus and tell us i am asking you about loving against virginia and would appreciate it if you would address the significance of that case in that case addressing the constitutional issue uh that the court certainly so held it does not translate though into its interpretation of the term sex within title seven as congress used that term but why the question is why not because i don't i don't think you're arguing that the prohibition against discrimination found in the constitution is broader than the prohibition in the statute in title seven most people have disparate impact theories under title seven but just for this straightforward intentional discrimination theory you can't just stand there and say well it's different you know why well the the language of the statute you seem to think that the meaning of a statute or meaning of a constitutional provision is frozen on the date of enactment is that your position because of that's false i mean loving is an example in 1868 when the 14th amendment was passed they didn't think that you know they were creating a right to have interracial marriage they assumed it would you know be forbidden and similarly you know 1964 the date of title seven uh that's a long time ago in terms of how people thought about sex and in particular how they thought about homosexuality so you think we're bound by what people thought in 1860 in 1964 in interpreting the statute more than a half century later uh no your honor not that that is not our position does the court and this court have interpreted that's how you started out by saying that you know the statutes 1964 they understood sex to mean the gender you know that you're born with oh well you're like the supreme court has told us in hopkins and on call that sex means gender male or female this court has they didn't actually say that in in either hopkins or on cow well they have told us uh respectfully honor that the test is uh whether the male would be treated differently or the female exactly and so that's that's the test that i think it's tricky for you and i might add this is just an aside really that it's very odd to me that that ivy is here since your brief says and i take this as as a given um that ivy tech deplores uh discrimination against same-sex um you know people with a sexual orientation that's not heterosexual and so you're not one of these companies or entities that says no we actually don't even think this should happen but i'll put that to one side i guess you're you're defending against the um but it's it is a little odd i appreciate the honor the the in this case of course presented at 12b6 motion testing the legal theory pleaded by plaintiff of sexual right and you said we deplore sexual orientation discrimination but we're going to defend our right to do it anyway at the procedural level certainly your honor and and they have sex uh ivy tech has a policy prohibiting discrimination against uh on the basis of sexual orientation right that's the thing that's a little strange why do you think they're lesbians um what was the question these particular people did you what do you think people are i think there is this well the type of person the case law has cited to uh it's not a case law question i don't understand what is the the characteristic is what uh medical professionals i'm sorry it's not just ugly men so it has become an immutable it's been understood now to be an immutable trait um of a person whether heterosexual a homosexual asexual look it's probably genetic or biological or maybe early childhood effects why doesn't that make them really a different sex yes yes you're correct john the modern science and the case law i'll treat it as it's not a trait uh the the case law has dealt with this but if it's part of your genetic makeup doesn't that make you significantly different from other women you're all women but you're very different and you're different in a way that's built into your genes just like the the more common preference of women for men is genetic it's not that they chose it you know that's how we're that's how the race evolves and so on so now they're you know they're recognized to be a lot of homosexuals lesbians male and so on and why doesn't that create a real differentiation in in the sex the sex of the normal woman and the sex of the lesbian they're different they're both women but they're very different types for reasons that are probably genetic so it's not a casual sort of you know choice that people make respect and spit your honor that this type of question is why this is designed for congress to address sexual orientation no no look that's the business about being frozen on the date of enactment you take something like the sherman act sherman act enacted in 1890 for the last 30 years or so it has been interpreted in accordance with modern economic understandings of monopoly and competition and so on now that the modern understanding did not exist in 1890 so here's a statute being interpreted in a way that the framers would not have understood let alone could possibly have intended and when justice scalia voted to classify burning the american flag in a political demonstration as a form of speech you think he was simply going back to what 18th century people thought when they said free speech in the first amendment oh free speech yeah burn things sure that's a that's a form of speech right so constantly the judges are reinterpreting statutes in a way that is not consistent with the why isn't this the perfect case for that the the this this court and the caseload acknowledges that you look in the current context that you look at the current context but the the point of the the discrimination of male versus whether it's a male or female that is still the gender that we are we are with today and it would be a matter for congress to address sexual that that's actually the question before us i think statutes which which come to have a different meaning over time because of the change of how people understand things you could say that about everything so you could say that about the sherman act you could just say no it's for congress always congress has to correct the statute judges can't do it so before you respond i think judge williams may also have had well i mean just following along in this same line you're relying on kyle but the specific language there says statutory prohibitions often go beyond the principal evil to other reasonably comparable evils so taking the case you're relying so much on that very language is there that speaks to the point that judge posner is getting at and you don't seem to have an answer it is a challenging question your honor i acknowledge that that this issue is developing both scientifically the medical acceptance the social acceptance of this issue uh which likely submit that that makes it an ideal issue for congress which has been attempted with congress over and over sexual orientation is used for instance in the in the hate crimes and has never acted never been added uh to this okay you are here and i have a very simple-minded question yes if a woman would not be fired for dating a man but would be for dating a woman why is that not just discrimination based on sex plain and simple the reason your honor is because it's based on the sexual orientation of preference as opposed because the whether it's a woman i don't understand that though she she but for the fact that she isn't a man she gets fired i mean she it brings you back to the loving problem yeah it does take you straight back to loving does religious doctrine have any play in this particular statute i'm sorry does religious doctrine have any particular play in a statute and well of course religion is uh off limits under title seven but the the case yes your honor and the case law um talks about the fact go to price waterhouse that congress has specified what is off limits and leaving to the employer free choice otherwise so for instance congress has included familiar status in the fair housing act but not in title seven political association is not protected so but but our issue i mean we understand that but fundamentally we're here to try to decide whether that word sex in the 1964 legislation properly understood encompasses the kind of situation that ms hively faced encompasses the kind of situation uh judge rovner uh has described if you started from the premise that sex and sexual orientation are two different things then your argument flows just fine sexual argument orientation isn't there but that's not the starting point the starting point is what does that word sex encompass especially in light of the later supreme court developments in loving in and the other cases we've been discussing could i put this in the form of a question i guess that i think all of us recognize that if we were to extend title seven to sexual orientation discrimination that's a pretty significant expansion of what has been understood to be the scope of the statute but given price waterhouse against hopkins which which i find most compelling here um price waterhouse against hopkins seems to tell us that it violates title seven to discriminate against a woman because she looks gay and behaves outwardly as somebody who is gay i have a hard time drawing a principled distinction between discrimination against somebody for looking gay and for being gay and would invite your cop your answer to that yes that has been a challenge for the courts and as the this court has noted in ham for instance that that may be difficult um and in a sense it's only the phonies that get protection right it is an odd uh situation uh to be sure your honor but that's where congress has left us just as with congress has i mean the problem what judge rovner's opinion for the panel explains in considerable detail and just just how difficult uh and arbitrary this line has become in the case law and that's that's a that has been a powerful argument um and i guess i would ask for your help in in how do courts draw the line you think we should draw without sounding arbitrary and has done that just as um in each case whether it's summary judgment or trial has addressed that or here based on on the pleadings it's it's not always going to be easy but that's the work of the courts to do that and to the extent that star decisive says the fix would come from the supreme court or from congress rather than this court overruling prior precedent that is consistently held through the years that sexual orientation is not covered i take it that you would concede rejecting precedent well star decisive gives us the supreme court tells us and this course tells us gives us it's an important part of this branch of predictability and certainty right what the significance of precedent is that often um you have um you have reliance on it you have companies that do one thing rather than another because they feel that the court has given them you know the meats and bounds of what they can do when there are strong reliance interests that's a that's a strong argument for retaining a precedent unless the precedent is doing significant harm in other respects okay but where in this are what we're discussing today where is the strong reliance interest on retaining an obsolete definition of sex who's going to be hurt if if the lesbians and male homosexuals have a little more job protection fair point your honor in fact the business world is increasingly adopting policies like ivy tech that prohibit discrimination on sexual orientation south bend where the plaintiff lives has an ordinance against sexual orientation discrimination so the story decisive that is not my question my question is what reliance interests would be destroyed by recognizing the word sex you know in title seven as embracing sexual orientation you know i can't i'm unable to identify one if this court were to do so within this circuit employers would adjust accordingly uh and and treat this as i'm sorry i don't interest i'm not identifying it i'm unable to identify no reliance interest what's the big deal about adhering to a precedent the purpose of the president is to induce reliance provide guidance okay it's not doing that why stick with it well the supreme court precedent also tells us in star decisive this is part of importance of of the court uh and not revisiting decisions what's with revisiting a decision if you're not going by doing that if you're not going to you know wreck people's businesses and and throw them off course because they relied heavily on this it certainly lessens that that important your honor i acknowledge that and after uh price waterhouse and on call does that do those cases really leave us with a strong precedent in this for the position you know that you you have had to come here and espouse the there have been these series of cases that this court has pronounced that address and two of them address and deal with price waterhouse supreme court has not accepted certiorari in those and four other cases from other we know that means very little right of course the court repeatedly tells us not to put much weight on that so to get back to what judge rovner is asking so would under price waterhouse the plaintiff in hamner who complained that his supervisor would flip his wrists at him and lisp at him or in euline the again the plaintiff who was a biological male who took hormones and had gender reassignment surgery and then presented to work as a female wouldn't they both have claims under price waterhouse because those were decided before price waterhouse so we have to take into account the evolution of law and price waterhouse speaks right to those issues they would have claims wouldn't they but euline certainly was decided prior to price waterhouse so the question is would they have claims now under price waterhouse under price waterhouse to the extent that the gender stereotyping would be actionable yes right yes but the subsequent decisions have been able to walk this difficult line that the court is left with in terms of sex sexual orientation if they would have claims you in euline and hamner would have claims then why should we rely on those cases and not look at price waterhouse that's driving the train here isn't it certainly price waterhouse is critical guidance from the supreme court and and this court has addressed price waterhouse in spearman and in ham subsequent to that last point i'd like to make your honors is that this is an important issue obviously that society is dealing with goes before the legislation regularly the courts are dealing with it and which urges the court that in in this particular case where we don't have these other facts in this case we have a very straightforward complaint that alleges sexual orientation so we don't have that difficult line to draw here because of any stereotyping comments as we've as the court has had in other cases i take it you would concede that if ivy tech promoted gay men to a full professorship but not ms hively that she would have stated a claim for sex discrimination as our case law understands it separating sexual orientation from sex discrimination yes your honor going to the comparators as you uh questioned earlier yes that your honors we ask that respectfully that the court affirm the decision below thank you thank you very much thank you anything further mr nevins just a couple of things your honor i i was uh um i was struck by judge poster's question about whether a broader definition would be might might be um appropriate i i would i would say that i i look back at a major opinion of this court a couple years ago and you know and equal protection of the laws did not have to have a broader definition but just a better understanding and evolving understanding that what once was unthinkable um now is it used to be the case that when we had marriage equality cases if we saw the opinion say something about court's proper role or the welfare of children that wasn't a good sign for us but i think you would rather argue that the original understanding was mistaken rather than has evolved well and and here of i'm arguing again as i said your honor for the most limited definition of sex is male or female and just a recognition that it cannot be okay to hold it against a woman for dating women when it's fine for a man to do it and actually you know you might recall that in ulane itself although this court uh drew the distinction the district court judge had not done so if you go back to the district court opinion i do remember that that that that judge to judge sykes's point about maybe the right and we went off on the wrong tangent right and you're trying to make a textualist argument for your interpretation of the term sex discrimination in the statute and um on call tells us that unexpected applications don't defeat a textualist interpretation that is correct your honor so you're not moving off of that argument i take it and i'm not detracting from that that that is the basic argument that is the simplest argument and so yes so essentially just to with with the blinders taken off can lead to the result that we need and that's all that we need thank you your honors all right thank you thank you to all council uh the court will take the case under advisement and we will recess briefly before the next case